LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC
RONALD RICHARDS, ESQ. (Cal. Bar No. 176246)
P.O. BOX 11480
Beverly Hills, California 90213
Telephone:(310) 556-1001 EXT. ONE
Facsimile:(310) 277-3325
E-mail: ron@ronaldrichards.com

Attorneys for Defendant
Susan Poon

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA-CR-19-162-DOC |
| Plaintiff, | **DEFENDANT SUSAN POON'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE FROM THE GUIDELINES SENTENCE AND A DOWNWARD DEPARTURE** |
| v. | |
| DR. SUSAN POON, et al, | Sentencing Hearing: |
| Defendants. | April 21, 2022 |
| | Time:  4:30 PM |

1

## **INTRODUCTION**

This former chiropractor comes to this Court in a far different position than when she was originally charged.  She has accepted responsibility for her crime, lost her license, but is maintaining a food industry business seven days a week.  This Court is very experienced and busy so without a lengthy verbose memo, here are the best reasons why this Court should not use the advisory guidelines in this case and sentence Dr. Poon to 6 months home detention plus 24 months incarceration.

First, Dr. Poon has no prior record of any kind. Second, the portion she actually made from this offense is 20% of the intended loss amount.  The loss amount overstates the conduct.  Something is not right that the supplier keeps the billings but she gets assessed the full weight of them for sentencing purposes.  Third, she should have never gone to trial and if we were her counsel, we would have resolved the case without the identity theft portion. There were only three actual victims of this offense as stated in the PSR. For whatever reason, her prior counsel did not bring this to a resolution and instead, a new witness, a no testimony trial was conducted with masks during the pandemic.  The result was obvious.  Fourth, since then, she followed new counsel's advice and proffered.  As a result, the government is recommending acceptance of responsibility.  This case should be treated as such.  Fifth, it is well documented that Asians are victims of discrimination since Covid as well as prior to Covid.  It has become heightened during Covid.  6 months of home detention plus 24 months of custody for the identity theft is substantial for a non-violent defendant who made one mistake in her life and has completely accepted responsibility.  Sixth, she takes care of her

elder mother and is gainfully employed in her own business. She contributes to society and is a life worth saving.

Other than the tragic events that brought her to this Court, which she has taken full responsibility for, she has lived an exemplary life. The letters from friends and family show that she is an incredible person that deserves some accommodation. The guidelines did not contemplate someone like Dr. Poon and she has strong mitigating factors.

She is also a very productive member of society who works daily in the food industry creating amazing Chinese vegan meals. She wakes up early and is creating happiness and healthy organic vegan and Chinese food items for her customers. Unlike a lot of defendants who are facing custody time, she has been working hard since losing her medical license and continues to be a productive member of our community and society.

Dr. Poon has filed numerous sentencing letters. Rather than repeat them all here, the Court can review them and see this person is a special person who is respected and loved by many people. She is clearly a life worth saving.

## **APPLICABLE LAW**

In *United States v. Petri*, 731 F.3d 833, 842 (9th Cir. 2013), the 9th Circuit reiterated the scope of what a District Court is required to do at sentencing.

"A sentencing court must consider the sentences suggested by the parties after determining the applicable Guidelines range, and under § 3553(c), it must decide if the § 3553(a) factors support the suggested sentence. Carty, 520 F.3d at 991. Once the district court selects its sentence, it must give an explanation that "communicates that

4

the parties' arguments have been heard, and that a reasoned decision has been made."
Id. at 992.

The "district court need not tick off" each factor, but "when a party raises a specific,
nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested
sentence, then the judge should normally explain why he accepts or rejects the party's
position." Id. at 992–93"

Dr. Poon has various non-guideline factors this Court could consider in sentencing her.
The law clearly allows non-guideline sentences for many years. In both *United States v.
Whitehead*, 532 F.3d 991 (9th Cir.2008) (per curiam) and *United States v. Ruff*, 535 F.3d 999
(9th Cir.2008) the 9th Circuit upheld as reasonable non-Guidelines sentences that involved
minimal, if any, prison time notwithstanding advisory Guidelines ranges of 41 to 51 months
and 30 to 37 months, respectively. In doing so, the Court emphasized the broad discretion
enjoyed by district courts in fashioning sentences that fully and adequately reflect the
penological factors set forth in 18 U.S.C. § 3553(a). *Whitehead*, 532 F.3d at 993; *Ruff*, 535
F.3d at 1003-04.

Dr. Poon lost her medical license. This is a factor this Court can consider.  Collateral
consequence is allowed in some circuits.  In *United States v. Pauley*, 511 F.3d 468, 469 (4th
Cir. 2007), Larry Pauley pled guilty to one count of possessing photographs that contained
images of child pornography, 18 U.S.C. § 2252A(a)(5)(B). At sentencing, the district court
determined that Pauley's Guidelines range was 78 to 97 months' imprisonment. After

5

considering this range in conjunction with the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Pauley to forty-two months' imprisonment.

The *Pauley, supra*, Court found that in its consideration of the § 3553(a) factors, the district court correctly found in the exercise of its discretion that other facts warranted a sentence lower than that recommended by the Guidelines' range. The district court found that Pauley warranted a lower sentence because he was deeply remorseful and, besides the criminal conduct at issue, he was a good father and teacher. Such considerations were appropriate because they are directly tied to § 3553(a)(1)'s directive that the court consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

**<u>The district court also found that Pauley warranted a lower sentence because he lost his teaching certificate</u>** and his state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for "just punishment," *id*. § 3553(a)(2)(A), and "adequate deterrence," *id*. § 3553(a)(2)(B). The district court further explained that a lower sentence would allow Pauley to be rehabilitated through the counseling he will receive during incarceration, and the court noted that a lifetime of supervised release would reduce the risk of Pauley becoming a repeat offender and would deter him from future criminal conduct. These are also valid considerations under § 3553(a). In sum, considering all of the factors that the district court viewed as mitigating in their totality, the Court held that the thirty-six month downward variance was supported by the

justifications necessary to uphold the sentence.  See *United States v. Pauley*, 511 F.3d 468, 474–75 (4th Cir. 2007).

In *United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008), the 9th Circuit cited Pauley without any negative cite.  The Court noted in fn. 1, that courts have affirmed low or below guidelines sentences for crimes ranging from the distribution of controlled substances to the unlawful possession of child pornography or a firearm. See, e.g., *United States v. Gall*, 128 S.Ct. 586, 602 (2007) (affirming below guidelines sentence for conspiracy to distribute ecstasy); *United States v. Martin*, 520 F.3d 87 (1st Cir.2008) (affirming below guidelines sentence for conspiracy to distribute cocaine base); *United States v. Grossman*, 513 F.3d 592 (6th Cir.2008) (affirming below guidelines sentence for possession of child pornography); *United States v. Lehmann*, 513 F.3d 805 (8th Cir.2008) (affirming below guidelines sentence for unlawful possession of a firearm); *United States v. McGhee*, 512 F.3d 1050 (8th Cir.2008) (affirming below guidelines sentence for possession with intent to distribute cocaine base); *United States v. Pauley*, 511 F.3d 468 (4th Cir.2007) (affirming below guidelines sentence for possession of child pornography); *United States v. McBride*, 511 F.3d 1293 (11th Cir.2007) (affirming below guidelines sentence for distribution of child pornography).

A felony conviction for someone who otherwise, has led a worthy life has severe consequences which is recognized by numerous courts.  In *United States v. Jaime*, 235 F. Supp. 3d 262, 265 (D.D.C. 2017), Judge Sullivan has previously discussed the need to develop tools to allow individuals charged with certain non-violent offenses the opportunity to demonstrate their rehabilitation without triggering such consequences. See *United States v. Saena Tech Corp.*, 140 F.Supp.3d 11, 46 (D.D.C. 2015); see also *United States v. Nesbeth*,

188 F.Supp.3d 179, 185 (E.D.N.Y. 2016) (noting that there are "nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons"); *Stephenson v. United States*, 139 F.Supp.3d 566, 568–69 (E.D.N.Y. 2015)(noting the accumulation of "solid evidence establishing that a criminal conviction is often a significant obstacle to employment" and the link between unemployment and recidivism).

Dr. Poon is being treated more severely than some persons convicted of drug offenses or child pornography.

This case cries out for an adjustment. Probation has recommended a six-month variance to 72 months. The government has recommended 63 months plus the 24 months consecutive. This is based upon no variance but a two level reduction for acceptance. The guidelines range is 63 to 78 months according the government's sentencing memo.

In *United States vs. Avenatti*, 19 CR 377 (PGG), Judge Gardephe was faced with the following: 1. Guidelines range of 108 to 135 months. 2. Probation recommended 96 months. 3. The government recommended a substantial sentence. The Court sentenced Mr. Avenatti to 30 months. The court departed 70 months from the guidelines. The sentence was July 8, 2021. This was a $25,000,000 extortion case.

In *United States vs. Jean Lang*, 2:16-cr-00376-JAK, the government sought 27 months on a $1,000,000 false statement case. The Court sentenced the defendant to 6 months. The guideline range was 27-33 months. The sentence by Judge Kronstadt was rendered on December 3, 2020.

Attached to the Avenatti sentencing memorandum in New York was a chart which included sentences for various non-violent crimes. It is obvious that if one is a Congressman

8

or Attorney, there were broad departures downward.  A copy of the chart is attached to this brief as Exhibit "A".

This Court is also familiar with the college cheating scandal cases.  Most of the parents were given probation.

## RECENT POSITIONS TAKEN BY THE DOJ UNDERMINE USING THE LOSS AMOUNT OVER THE DEFENDANT'S GAIN

Finally, the defendant's gain is used by the DOJ as recently as April 6, 2022 in assessing the defendant's guideline range and sentence instead of the loss amount.

In *United States vs. Junzo Suzuki & Paul Suzuki*, in a high-profile DOJ case with Main Justice being prosecuted in Nevada, defendant Paul Suzuki received a 60-month sentence.  A copy of the Government's memorandum and sentencing judgment are attached as Exhibit "B" and "C".  In their plea agreements, the United States and the defendants stipulated to an offense level calculation that applied the "gain" to the defendants through their companies during the relevant time period (approximately $2.5 million) instead of the "loss" amount. Applying the gain to the defendants results in an adjusted offense level of 31. After a three-level reduction for acceptance of responsibility, the total offense level for each defendant is 28. When paired with a Criminal History Category of I, the advisory guidelines range is 78 to 97 months. The government in *Suzuki* requested that the Court follow the stipulated offense level.

Although the PSR calculated each defendant's total offense level as 36 by applying a loss amount of $141 million, the Probation Officer still arrived at the same recommended sentence through a "downward departure to 60 months"—as contemplated in the plea

agreements—which the Probation Officer concludes "is appropriate and more accurately reflects the defendants' overall participation in the scheme." PSR at ¶ 105. The Probation Officer further noted that, "the probation officer agrees, that a sentence based on the money gained by the defendant, as opposed to the loss he caused, more accurately reflects his involvement in the offense." PSR at ¶ 106.

### A. The Defendants' Gain Is a Better Measure of Culpability Than Loss

In *Suzuki, supra*, the government argued that even if the Court were to follow the PSR's calculation, "the United States submits that using gain instead of loss in this case is appropriate because—as the U.S.S.G. contemplate and the U.S. Probation Office acknowledges—this is an instance in which the offense level determined under the U.S.S.G. substantially overstates the seriousness of the offense as applied to these particular defendants. See U.S.S.G. § 2B1.1, n. 21(C). As the commentary explains, "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be appropriate." *Id*. Here, the United States submits that a loss amount of $141 million unfairly overstates the culpability of these particular defendants. Instead, the Court should apply the defendants' gain from the scheme of approximately $2.5 million."

This was a much larger loss that these defendants were involved in than Dr. Poon. Also, notwithstanding the guidelines, the government and probation still recommended 60

10

months with a loss of $141million with a gain of $2.5million.  Dr. Poon gained $261,641.40.
This is ten percent of the gain of Mr. Suzuki.

The reason Dr. Poon's counsel is proffering these other cases is that in non-violent first
time offender cases, a departure request for a professional who lost their license, has dozens
of sentencing letters from friends, family, and colleagues, and who is working hard in her post
conviction world to do the right thing, is someone who deserves a total prison sentence of 6
months house arrest plus 24 months for the identity theft.  This is a very long time for a first
time offender.  The message and punishment do not need a greater sentence.  She is very
sorry for her behavior and frankly, to sentence someone to six years in prison for medical
insurance fraud when their take was $200,000 is excessive.   It seems like if you're rich and
connected, you do better at sentencing as shown in some of the cases cited above.  It is hard
to reconcile the 72 months probation that is requested when you review other sentencing
cases for a first time non-violent offender who accepted responsibility.  Dr. Poon made a huge
mistake but lost it all and paid dearly already.  She is working, trying, and has accepted
responsibility.

As the PSR points out, Dr. Poon received $261,641.40 as opposed to the $1,117,98.70
paid to Stymco.  Stymco has never returned those funds nor were they asked to.  It seems like
they will get away with a windfall.

This fact does not excuse the guideline calculation but certainly can be considered as a
mitigating fact.  24 months in prison is a long time for a 56-year-old woman.  As the revised
PSR states, since 2017, Poon has been residing with her brother and together they have been
their elderly mother's primary caretakers in Laguna Hills, California. Additionally, Poon has

been the primary financial contributor to their household expenses. Poon's mother, age 85, suffers from sciatica, hyperthyroidism and has difficulty walking. As such, Poon's main concern has been taking care of her mother.

Dr. Poon will be away from her mother for at least two years which is a substantial amount of time.  There is no reason to punish more than that under these facts.  She has all pluses since her conviction including an acceptance of responsibility.  This is a defendant the Court can show some mercy to and provide a departure.  It would be consistent with what other courts do for non-violent first-time offenders who have accepted responsibility.

LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC

Dated: April 6, 2022

/s Ronald Richards

RONALD RICHARDS
Attorney for Defendant
Susan Poon

12

# EXHIBIT A

**Comparable Sentences Chart**[1]

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| Dina Gaudio<br>*United States v. Dina Gaudio*<br>No. 3:21-cr-00052, W.D. Ky.<br>Hon. Benjamin Beaton | Pending | Defendant, an assistant basketball coach, threatened to expose NCAA violations to the media unless the Louisville Cardinals paid him 17 months of salary at $25,000 per month or a lump sum payment of $425,000. | Per Rule 11(c)(1)(C) sentencing recommendation, probation | Pending<br><br>One year probation on 9-3-21 | Pleaded guilty in exchange for a binding Rule 11(c)(1)(C) sentencing recommendation of probation |
| Joseph Hoats<br>*United States v. Christopher Hammatt et al.*<br>No. 119-cr-00067, S.D.N.Y.<br>Hon. Paul G. Gardephe | 05/19/2021 | Defendant, a former California lawyer, lied to a federal judge concealing his role in a scheme to cash in on a fake $16.5 million General Motors injury settlement. | 15-21 months' imprisonment | Two years of supervised release, of which the first six months is served in home confinement | Pleaded guilty to Perjury (18 U.S.C. §1621). |
| Daniel Kamensky<br>*United States v. Daniel Kamensky*<br>No. 1:21-cr-00067, S.D.N.Y.<br>Hon. Denise L. Cote | 05/07/2021 | Defendant, a hedge fund manager, pressured rival bidder in Neiman Marcus bankruptcy proceedings to abandon a higher bid for assets so that defendant's hedge fund would win bid and ultimately receive millions of dollars in benefits. As an appointed member of the Official Committee of Unsecured Creditors in the bankruptcy proceedings, defendant "violate[ed] his fiduciary responsibility – in an effort to take extra profits for himself and his hedge fund." | 12-18 months' imprisonment | 6 months | Pleaded guilty to Bribery and Extortion in Connection with Bankruptcy (18 U.S.C. § 152(6)) |
| Thomas Scorcia<br>*United States v. Joseph Amato et al.*<br>No. 1:19-cr-00442, E.D.N.Y.<br>Hon. Brian M. Cogan | 04/05/2021 | Defendant was an inducted member of the Colombo organized crime family who ran a lucrative loansharking businesses. He engaged in racketeering, and also let it be known that he would resort to violence to advance his business and reputation. | 37-46 months' imprisonment | 42 months in prison, followed by two years of supervised release, fine of $20,000, forfeiture of $75,000 | Pleaded guilty to Racketeering (18 U.S.C. § 1962(c)) |
| Joshua Polloso Epifaniou<br>*United States v. Joshua Polloso Epifaniou*<br>No. 2:17-cr-01280, D. Ariz.<br>Hon. Mark H. Cohen | 03/17/2021 | Defendant, a Cyprus national, hacked websites, including websites for a consumer report website in Arizona, online game publisher in California, and hardware company in New York. He stole user information, which was used to extort the websites for ransom money. | 57-71 months' imprisonment | Two 12 months and one day prison sentences to be served concurrently, nearly $600,000.00 in restitution | Pleaded guilty to Computer Fraud Conspiracy (18 U.S.C. § 371) and Obtaining Information from Protected Computer (18 U.S.C. §§ 1030(a)(2), (c)(2)(B)(i), and (c)(2)(B)(iii)) |

---

[1] The sources for the information contained in this chart were publicly available reporting and materials from court dockets, such as charging instruments, plea agreements, sentencing submissions, and sentencing transcripts, as well as public press reporting. We can make any of this information available to the Court if requested.

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| Christopher Cantwell<br>*United States v. Christopher Cantwell*<br>No. 1:20-cr-00006, D.N.H.<br>Hon. Paul J. Barbadoro | 02/24/2021 | Defendant convicted of extortion and threat offenses. Defendant threatened to harm victim's reputation, reported victim to child protection authorities, and posted identifying information and photographs of victim and his family on the internet. When victim did not provide Defendant with information sought, Defendant sent victim message that said "So if you don't want me to come and f*ck your wife in front of your kids, then you should make yourself scarce[.] Give me Vic, it's your only out." | 41-51 months' imprisonment | 41 months | Pleaded guilty to Cyberstalking (18 U.S.C. § 2261(2)(b)) and Extortion (18 U.S.C. § 875(d)) |
| Jorge Esteban Sanchez Ramos<br>*United States v. Jorge Esteban Sanchez Ramos*<br>No. 19-cr-00319, C.D. Cal.<br>Hon. Dolly M. Gee | 01/27/2021 | Defendant used multiple aliases and Facebook accounts to mask his identity as he targeted friends and acquaintances from high school. He threatened to publish nude or sexually explicit photos of women if they did not send him more nude photos or videos of themselves. On certain occasions, he published sexually explicit photos of his victims or threatened to rape them. | N/A | 18 months in prison, followed by two years of supervised release | Pleaded guilty to Stalking (18 U.S.C. §§ 2261A(2)(b), 2261(b)(5)) |
| Jeffrey Veach<br>*United States v. Thomas Williamson Sr. et al.*<br>No. 2:18-cr-00089, N.D. Ind.<br>Hon. Theresa L. Springmann | 09/23/2020 | Former union president sentenced following guilty plea for his role in a violent extortion conspiracy. Defendant organized a "brutal assault" on non-union ironworkers working on a construction contract when they refused to sign up with the union or stop working on the site located in the union's "territory." According to the DOJ press release, "victims were beaten with fists and loose pieces of hardwood" and "one of the workers sustained a broken jaw that required several surgeries and hospitalization." | 108-135 months' imprisonment | 42 months | Pleaded guilty to Hobbs Act Extortion Conspiracy (18 U.S.C. § 1951(a)) |
| Timothy Litzenburg<br>*United States v. Timothy Litzenburg*<br>No. 3:20-cr-00013, W.D. Va.<br>Hon. Norman K. Moon | 09/18/2020 | Defendant attorney pled guilty for role in scheme to extort multinational chemical company of $200 million. Defendant threatened to go public with company's exposure unless company settled one client's claims for $5 million and separately enter into consulting agreements with defendant and associates for $200 million. Defendant took steps to thwart clients' potential claims. | 151-188 months' imprisonment | 24 months | Pleaded guilty to Transmission of Interstate Communications with Intent to Extort (18 U.S.C. § 875(d)) |

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| Daniel Kincheloe<br>*United States v. Daniel Kincheloe*<br>No. 3:20-cr-00014, W.D. Va.<br>Hon. Norman K. Moon | 09/18/2020 | Defendant attorney pled guilty for role in scheme to extort multinational chemical company of $200 million. Defendant threatened to go public with company's exposure unless company settled one client's claims for $5 million and separately enter into consulting agreements with defendant and associates for $200 million. Defendant took steps to thwart clients' potential claims. | 151-188 months | 12 months and one day | Pleaded guilty to Transmission of Interstate Communications with Intent to Extort (18 U.S.C. § 875(d)) |
| Danial McMahon<br>*United States v. Daniel McMahon*<br>No. 3:19-cr-00014, W.D. Va.<br>Hon. Norman K. Moon | 08/31/2020 | Defendant engaged in various behaviors including using social media to threaten an African-American candidate from running for city council office in Charlottesville, VA, threatening to sexually assault the young, autistic daughter of a woman in North Carolina, and cyberstalking and threatening other people online. | 33-41 months' imprisonment. | 41 months in prison (one term of 12 months and one term of 41 months to run concurrently), followed by three years of supervised release. | Pleaded guilty to Bias-Motivated Interference with a Candidate for Elective Office (18 U.S.C. § 245(b)(4)) and Cyberstalking (18 U.S.C. § 2261A(2)). |
| Timothy J. Smith<br>*United States v. Timothy J. Smith*<br>No. 3:19-cr-00032, N.D. Fla.<br>Hon. M. Casey Rodgers | 06/24/2020 | Defendant obtained private information, including trade secrets, valued at hundreds of thousands of dollars from a company. He then tried to extort two owners of the company for more valuable information. | 18-36 months' imprisonment | 18 months in prison to be counted concurrently, followed by one year of supervised release. | Found guilty by jury of Theft of Trade Secrets (18 U.S.C. § 1832(a)(1)), Interstate Threatening Communications (18 U.S.C. § 875(d)) |
| Kelly Rivas<br>*United States v. Kelly Rivas*<br>No. 1:19-cr-00529, S.D.N.Y.<br>Hon. Paul A. Engelmayer | 10/07/2019 | Defendant, a member of MS-13 gang, collected and oversaw the collection of dues in New York, Virginia, Maryland, and elsewhere. She transmitted and ensured the transmission of collected funds to other MS-13 members. She pressured MS-13 members to meet their dues payment obligations by any means necessary, including through criminal activities, and resorted to threats of violence to extort dues from members. | 33-41 months' imprisonment | 48 months in prison, followed by three years of supervised release, forfeiture of $19,346 | Pleaded guilty to Conspiracy to Commit Extortion (18 U.S.C. § 1951) |
| Gerdandino Delgado-Escobar<br>*United States v. Jairo Arnaldo Jacome et al.*<br>No. 8:18-cr-00216, D. Md.<br>Hon. Paula Xinis | 09/09/2019 | Defendant and his co-conspirators extorted numerous business owners operating in the Langley Park area and conspired with other MS-13 members and associates to obtain money from victims through threats and actual use of force, violence, and fear. | N/A | 15 months in prison, followed by three years of supervised release, $15,470.00 in restitution | Found guilty by jury for Conspiracy to Interfere with Interstate Commerce by Extortion (18 U.S.C. § 1951(a)) |

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| John L. Steele<br>*United States v. Paul R. Hansmeier et al.*<br>No. 0:16-cr-00334, D. Minn.<br>Hon. Joan N. Ericksen | 07/09/2019 | Defendant attorney sentenced in multi-million dollar fraud and extortion scheme to obtain payments from victims by threatening sham copyright infringement lawsuits against individuals who allegedly downloaded pornography from file-sharing websites that the defendant and his co-defendant lured them to. Defendant created sham entities, lied to state and federal courts in filing fraudulent lawsuits and securing subpoenas to obtain victim information, and obtained millions in extortionate settlement payments from victims. | 121-151 months' imprisonment | 60 months | Pleaded guilty to Conspiracy to Commit Mail Fraud and Wire Fraud (18 U.S.C. § 1349), Conspiracy to Commit Money Laundering (18 U.S.C. § 1956) |
| Frank Saddler<br>*United States v. Frank Saddler*<br>No. 3:18-cr-00201, S.D. Miss.<br>Hon. Henry T. Wingate | 04/16/2019 | Defendant, a certified law enforcement officer, extorted money from convenience store owners who had been charged with criminal violations relating to SNAP in exchange for not pursuing criminal charges against them. | 37-46 months' imprisonment | 39 months in prison, followed by three years of supervised release, restitution of $28,374.64. | Pleaded guilty to Extortion Under Color of Official Right (18 U.S.C. § 1951(a)) |
| Tony John Evans<br>*United States v. James Verne Russell et al.*<br>No. 1:18-cr-00103, D.D.C.<br>Hon. Emmet G. Sullivan | 04/08/2019 | Defendant and several co-defendants / family members worked together to extort and defraud others. As part of the scheme, the defendant pretended to be a mobster to force a Maryland man to embezzle more than $4 million from his employer in order to provide the defendant and co-conspirators with money, gold, and luxury goods. | 57-71 months' imprisonment | 60 months in prison, followed by three years of supervised release, restitution of $4,217,542.86. | Pleaded guilty to Interference with Interstate Commerce by Extortion and Aiding and Abetting, Causing an Act to be Done (18 U.S.C. §§ 1951 (a) & 2) |
| James "Jim" Gatto<br>*United States of America v. James "Jim" Gatto et al.*<br>No. 1:17-cr-00686, S.D.N.Y.<br>Hon. Lewis A. Kaplan | 03/05/2019 | Defendant, a former Adidas executive, channeled secret payments to families of top recruits to attract them to Adidas-sponsored basketball programs in a pay-for-play scandal. | 46-57 months' imprisonment | Nine months in prison, followed by two years of supervised release | Found guilty by jury for Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349), two counts of Wire Fraud (18 U.S.C. §§ 1343 & 2) |
| Richard Valentini<br>*United States v. Ralph Santaniello et al.*<br>No. 3:16-cr-30033, D. Mass.<br>Hon. Timothy S. Hillman | 05/11/2018 | Defendant and his co-defendants, members of the Genovese La Cosa Nostra (LCN), engaged in various criminal activities, including extortion, and used violence on their victims or made threats violence or murder. In one instance of attempted extortion from which defendant profited, his co-defendants threatened to cut off a victim's head and bury his body unless he complied with their directives. | 63-78 months' imprisonment | 60 months | Pleaded guilty to Conspiracy to Interfere with Commerce by Threats or Violence (18 U.S.C. § 1951), two counts of Using Extortionate Means |

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| Cordell Fleming<br>*United States of America v. Cordell Fleming*<br>No. 1:13-cr-00309, N.D. Ga.<br>Hon. Timothy C. Batten, Sr. | 12/02/2013 | Defendant, a former Social Security Administration claims representative, extorted money from the disabled, aged, and indigent in return for expediting their claims in amounts ranging from $500 to $1,800 from at least nine Supplemental Security Income recipients or their representatives. | 15-27 months' imprisonment | 12 months and one day in prison, followed by three years of supervised release, $10,300.00 in restitution | Pleaded guilty to Extortion Under Color of Official Right (18 U.S.C. § 1951(a)) |
| Richard G. Renzi<br>*United States v. Richard G. Renzi*<br>No. 4:08-cr-00212, D. Ariz.<br>Hon. David C. Bury | 10/28/2013 | Former U.S. Congressman convicted of 17 offenses after diverting client insurance premiums to fund his congressional campaign and using his legislative influence and position of authority to profit from a federal land exchange. | 97-121 months' imprisonment | 36 months | Found guilty by jury for Conspiracy to Commit Extortion, Attempted Extortion and Wire and Mail Fraud, Honest Services Wire Fraud, Conspiracy to Commit Money Laundering, Concealment of Money Laundering, Transactions with Criminally Derived Funds, Extortion Under Color of Official Right, Conspiracy to Make False Statements, Insurance Fraud, Racketeering |
| Giridhar C. Sekhar<br>*United States v. Giridhar C. Sekhar*<br>No. 1:10-cr-00573, N.D.N.Y.<br>Hon. Thomas J. McAvoy | 10/04/2011 | Defendant convicted of blackmailing the general counsel for the New York State Comptroller in failed attempt to extort a $35 million contract for his company by threatening to reveal alleged extramarital affair. Defendant was even carrying personal information about general counsel's wife and children in his wallet at the time of his arrest. Defendant found guilty after a plea of not guilty on six of seven counts in indictment. | 151-181 months' imprisonment | 15 months | Found guilty by jury for Extortion (18 U.S.C. § 1951(a)), Interstate Transmission of Extortionate Threat (18 U.S.C. § 875(d)) |
| David Zachary Scruggs<br>*United States v. David Zachary Scruggs*<br>No. 3:07-cr-00192, N.D. Miss.<br>Hon. Neal B. Biggers, Jr. | 07/02/2008 | Defendant was part of a scheme to bribe a judge so that the distribution of $26 million in attorneys' fees from Hurricane Katrina insurance litigation would be moved to arbitration. Defendant knew about a felony but had failed to report it. | 21-27 months' imprisonment | 14 months of prison, followed by one year of supervised release, fine of $250,000 | Pleaded guilty to Misprision of a Felony (18 U.S.C. § 4) |

| Defendant / Case / Court / Judge | Sentencing Date | Conduct of Conviction | Guidelines Range | Sentence Imposed | Additional Details |
|---|---|---|---|---|---|
| Richard F. Scruggs<br>*United States v. Richard F. "Dickie" Scruggs*<br>No. 3:07-cr-00192, N.D. Miss.<br>Hon. Neal B. Biggers, Jr. | 06/27/2008 | Defendant organized a scheme to bribe a judge so that the distribution of $26 million in attorneys' fees from Hurricane Katrina insurance litigation would be moved to arbitration. | 108-135 months' imprisonment | 60 months, followed by three years of supervised release, fine of $250,000 | Pleaded guilty to Conspiracy to Commit Bribery of an Elected Official by Means of Wire Fraud (18 U.S.C. § 371) |
| William S. Lerach<br>*United States v. William S. Lerach*<br>No. 2:07-cr-00964, C.D. Cal.<br>Hon. John F. Walter | 02/11/2008 | Defendant, a class-action lawyer, was charged with paying millions of dollars in secret kickbacks to clients who agreed to be named plaintiffs in more than 150 class-action and shareholder derivative lawsuits. | 15-21 months' imprisonment according to USPO PSR, 12-24 months according to plea agreement | 24 months in prison, followed by two years of supervised release, fine of $250,000, 1,000 hours of community service | Pleaded guilty to Conspiracy to Obstruct Justice and Submit False Testimony in Federal Judicial Proceedings (18 U.S.C. § 371) |

# EXHIBIT B

JOSEPH S. BEEMSTERBOER
Acting Chief
CORY E. JACOBS
Assistant Chief
DELLA SENTILLES
Trial Attorney
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 616-4994 (Jacobs)
(202) 445-8793 (Sentilles)

CHRISTOPHER CHIOU
Acting United States Attorney
JESSICA OLIVA
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101
(702) 388-6268
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:15-cr-00198-GMN-NJK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **UNITED STATES' SENTENCING** |
| | ) | **MEMORANDUM** |
| JUNZO SUZUKI & PAUL SUZUKI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     The United States of America, through Joseph S. Beemsterboer, Acting Chief of the Criminal Division, Fraud Section (Cory E. Jacobs, Assistant Chief, and Della Sentilles, Trial Attorney, appearing) and Christopher Chiou, Acting United States Attorney (Jessica Oliva, Assistant United States Attorney, appearing), by and through its undersigned counsel, respectfully

1

submits this sentencing memorandum in advance of Junzo Suzuki's and Paul Suzuki's sentencings, which are scheduled for April 5, 2022.

As the Court is aware, on January 5, 2022, the defendants pleaded guilty pursuant to written plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C), which contemplate each defendant being sentenced to a 60-month (*i.e.*, five-year) term of imprisonment. ECF Nos. 485-488. In light of the facts and circumstances specific to this case, the United States submits that this sentence is sufficient, but not greater than necessary to comply with the purposes set forth in imposing a sentence under 18 U.S.C. § 3553. As such, the United States respectfully requests that the Court sentence each of the defendants to a 60-month term of imprisonment.[1]

## I.    Relevant Background

On March 24, 2021, the defendants, Junzo Suzuki and Paul Suzuki (father and son, respectively), were charged by a superseding indictment for their roles in an investment fraud scheme operated through a Las Vegas, Nevada-based company called MRI International Inc. ("MRI"). ECF No. 420. MRI's CEO, Edwin Fujinaga, was tried and convicted before this Court in 2018, and on May 23, 2019, sentenced to 50 years in prison. ECF No. 338.

For several years before the defendants' knowing involvement, Fujinaga used MRI as a front for running a Ponzi scheme, in which newer investor money was used to repay earlier investors. Using MRI, Fujinaga defrauded over 10,000 Japanese investors of approximately $1.5 billion, with the promise that their investments would be used only to purchase medical accounts receivable ("MARS"). MRI purported to generate a profit by purchasing MARS from medical

---

[1]    Pursuant to the plea agreements, the parties are free to submit to the Court their respective positions regarding restitution (which is mandatory in this case under 18 U.S.C. § 3663A) after sentencing. The United States does not currently anticipate seeking forfeiture, but will inform the Court and the defendants as soon as possible if that position changes.

providers at a discounted rate, and then collecting on the accounts from the patients owing money. Ultimately, MRI collapsed, the fraud came to light, and Fujinaga—the Las Vegas, Nevada-based mastermind and ringleader of the fraud—was arrested, prosecuted, convicted, and sentenced to 50 years in prison.

By contrast, the defendants only first came to learn that Fujinaga was running a Ponzi scheme beginning in and around April 2012. Nevertheless, as the defendants admitted in their respective plea agreements, the defendants made materially false representations to victim-investors after this point—in particular, continuing Fujinaga's lie that the victims' investments in MRI would be used only to purchase MARS. ECF Nos. 487-488 at ¶ 12. In the one-year period between April 2012 (when the defendants became aware of Fujinaga's Ponzi scheme) and April 2013 (when MRI collapsed and Fujinaga's fraud was exposed), MRI and Fujinaga, with the defendants' help, raised approximately $141 million (of the larger $1.5 billion fraudulently raised and associated entirely with Fujinaga). *Id.* Most of the $141 million was used to pay existing investors. *Id.* For their roles during the one-year period, the defendants, through their companies, obtained a combined total of approximately $2.5 million in purported profits from MRI. *Id.*

After Fujinaga's trial and conviction, in and around April 2019, the defendants were extradited from Japan from where they resided and assisted Fujinaga. Defendant Junzo Suzuki is a Japanese citizen, and defendant Paul Suzuki is a dual Japanese and United States citizen. Although each defendant was initially detained, defendant Junzo Suzuki was later granted pretrial release on strict conditions due to the risk posed by COVID-19; defendant Paul Suzuki remains detained.

On January 5, 2022, the defendants Junzo Suzuki and Paul Suzuki each pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, and the Court conditionally accepted each defendant's plea of guilty. ECF Nos. 485-488.

The written plea agreements contain all the terms and conditions agreed to by the parties. With respect to sentencing, the parties have agreed to a 60-month term of imprisonment followed by a three-year period of supervised release for each defendant. The United States does not oppose the defendants serving their term of supervised release in Japan (where they both hold citizenship), but defers to the U.S. Probation Office and the Court. Finally, the parties are permitted to submit to the Court their respective positions regarding restitution (which is mandatory in this case under 18 U.S.C. § 3663A).

## II.    Legal Standard

Proper sentencing procedure requires that, before imposing sentence, the district court: (1) correctly calculate the Guidelines range; (2) treat the Guidelines as advisory; (3) consider the 18 U.S.C. § 3553(a) factors; (4) choose a sentence that is not based on clearly erroneous facts; (5) adequately explain the sentence; and (6) not presume that the Guidelines range is reasonable. *United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir. 2008). When the court imposes a sentence within the Guidelines range, "'it is probable that the sentence is reasonable'" because the court's application of the § 3553(a) factors accords with the United States Sentencing Commission's independent application of those factors in the "mine run of cases." *United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

It would constitute procedural error, however, for the court to "attach [ ] a presumption of reasonableness to the Guidelines range or weight[ ] the Guidelines range more heavily than other § 3553(a) factors." *Carty*, 520 F.3d at 994. The "Guidelines should be the starting point and the

initial benchmark," but the sentencing court must also consider the § 3553(a) factors "in determining the appropriate sentence." *Nelson v. United States*, 550 U.S. 350, 352 (2009).

### III.   Analysis

#### A.  The Offense Level Calculation

In their plea agreements, the United States and the defendants stipulated to an offense level calculation that applied the "gain" to the defendants through their companies during the relevant time period (approximately $2.5 million) instead of the "loss" amount.  Applying the gain to the defendants results in an adjusted offense level of 31.  After a three-level reduction for acceptance of responsibility, the total offense level for each defendant is 28.  When paired with a Criminal History Category of I, the advisory guidelines range is 78 to 97 months.  The government requests that the Court follow this stipulated offense level.

Although the PSR calculated each defendant's total offense level as 36 by applying a loss amount of $141 million, the Probation Officer still arrives at the same recommended sentence through a "downward departure to 60 months"—as contemplated in the plea agreements—which the Probation Officer concludes "is appropriate and more accurately reflects the defendants' overall participation in the scheme."  PSR at ¶ 105.  The Probation Officer further notes that, "the probation officer agrees, that a sentence based on the money gained by the defendant, as opposed to the loss he caused, more accurately reflects his involvement in the offense."  PSR at ¶ 106.

#### B.  The Defendants' Gain Is a Better Measure of Culpability Than Loss

Even if the Court were to follow the PSR's calculation, the United States submits that using gain instead of loss in this case is appropriate because—as the U.S.S.G. contemplate and the U.S. Probation Office acknowledges—this is an instance in which the offense level determined under the U.S.S.G. substantially overstates the seriousness of the offense as applied to these particular defendants.  *See* U.S.S.G. § 2B1.1, n. 21(C).  As the commentary explains, "there may be cases in

5

which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be appropriate." *Id.* Here, the United States submits that a loss amount of $141 million unfairly overstates the culpability of these particular defendants. Instead, the Court should apply the defendants' gain from the scheme of approximately $2.5 million.

As noted above and in the PSRs, the defendants' conduct was much more limited in scope than Fujinaga's. Indeed, they were not aware of the nature of the scheme until April 2012, when they were expressly informed by Fujinaga that MRI was using new investment money to pay existing investors. While the defendants continued to raise funds for another year—knowing that the funds were being used to pay back existing investors—even then, they were not fully aware of the extent of Fujinaga's scheme. Specifically, when Fujinaga told the defendants that new investor money was to be used to pay old investors, he continued to mislead the defendants by telling them that the reason for this diversion of funds was because MRI was being audited and temporarily could not access its funds, not because MRI had always been a Ponzi scheme.

Although the defendants fraudulently raised over $141 million for the Ponzi scheme, the United States submits that due to their limited knowledge of and participation in the scheme, it is fairer and just to hold them accountable only for the money that they gained through their companies (approximately $2.5 million), rather than the loss to the victims, for purposes of sentencing. This is because the offense level that results from using the gain more accurately reflects the defendants' culpability as compared to the scheme's mastermind, ringleader, and principal beneficiary: Edwin Fujinaga.

### C.  In Light of the Circumstances, a 60-Month Term of Imprisonment Is Warranted

Pursuant to the plea agreements, the parties have agreed that a 60-month term of imprisonment followed by a period of supervised release is appropriate for each defendant. As

described above and in the written plea agreement, the parties calculated each of the defendants' total offense level under the U.S.S.G. as 28, which results in a sentence of 78-97 months. Using this 78-97 months range as a starting point, the parties agreed to an 18-month variance from the low end of the U.S.S.G. range, which results in a sentence of 60 months of imprisonment for each defendant. Compared to Fujinaga, the defendants' conduct was far narrower, in terms of the amount of funds fraudulently raised, the benefits received, and the culpability of their knowledge. In light of the circumstances specific to this case, the United States respectfully requests that the Court sentence each defendant to a 60-month term of imprisonment.

## IV. A 60-Month Term of Imprisonment is Warranted under Section 3553(a) Factors

The United States submits that a 60-month term of imprisonment is "sufficient but not greater than necessary to comply" with the factors articulated in 18 U.S.C. § 3553(a). The nature and circumstances of the offense, the history and character of the defendants, the need for a just punishment, and the need to afford adequate deterrence to similar criminal conduct all warrant such a sentence.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The crime for which Fujinaga was convicted, and for which the defendants have pleaded guilty for their lesser involvement, was a serious offense. Fujinaga ran a years-long fraud scheme that defrauded over 10,000 Japanese investors for approximately $1.5 billion. The United States submits that the 50-year term of imprisonment imposed by the Court was just and appropriate. Given the substantially lesser role of the defendants, the United States submits that a 60-month term of imprisonment for each of them is equally just and appropriate.

### B.     The History and Characteristics of the Defendants

Both of the defendants have a criminal history category of I.  While Junzo Suzuki has no criminal history, Paul Suzuki does have criminal convictions relating to disorderly conduct when he was 20 and driving under the influence when he was 27.  Because neither offense involved fraud or deceit, they should not meaningfully impact the outcome of this case.  Both of the defendants worked for MRI for an extended period of time, but were only knowingly involved in the scheme for approximately one year.  In contrast to Fujinaga, who continues to maintain his innocence, the defendants, by entering guilty pleas, have both accepted responsibility for their roles in the scheme.

### C.     The Need for Just Punishment

The defendants should be held responsible for their proportionate roles in the scheme—and a 60-month term of imprisonment does precisely that.  As noted above, Fujinaga led the scheme from its inception in 2000, and did so alone until the defendants knowingly entered the scheme in April 2012.  For the next year until the scheme collapsed, the defendants worked together with Fujinaga to continue the scheme, and in doing so, helped raise over $140 million in investor funds.

Fujinaga—the mastermind, leader, and sole operator of the scheme for almost its entire duration—fraudulently raised approximately $1.5 billion from victim-investors for over a decade, and misused this money for lavish personal expenses, including a private jet; a mansion on a Las Vegas, Nevada golf course; real estate in Beverly Hills, California wine country and Hawaii; and Bentley, McLaren and Bugatti luxury cars.  For his crimes, Fujinaga was sentenced to a 50-year term of imprisonment.  By contrast, the defendants were knowingly involved in the scheme for only one year, during which time they helped Fujinaga fraudulently raise approximately $140 million (approximately 1/10th of the total money fraudulently raised by Fujinaga).  For their role

8

in helping Fujinaga, the defendants received, through their companies, a total combined amount from Fujinaga of approximately $2.5 million.

Given the defendants' one-year role in fraudulently raising only 1/10th of the total money that Fujinaga raised, their limited knowledge of the scheme, and the vastly disparate way in which Fujinaga illicitly profited from the fraud, a sentence of 1/10th of Fujinaga's 50-year term of imprisonment—namely, the 60-month term of imprisonment agreed to by the parties—would recognize proportionately the defendants' specific role in the fraud and avoid unwarranted sentencing disparities among the defendants, while also reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense given the particular circumstances of this specific case.

**D. The Proposed Sentence Affords Adequate Deterrence**

A 60-month term of imprisonment would also afford adequate deterrence to criminal conduct, both specifically and generally. The defendants' conduct—while serious—spanned one year, and a 60-month term of imprisonment in a United States federal correctional facility after having been extradited from Japan would likely deter each defendant from committing any further crime in the future. Generally, a 60-month term of imprisonment would send the message that if your criminal conduct—even if conducted in a foreign country—involves other criminals in the United States or makes use of United States instrumentalities (whether the wires, mail, or otherwise), you may be extradited to the United States, prosecuted, and sentenced to a federal prison term.

For defendant Junzo Suzuki, who has been on pretrial release because of COVID-19 since fairly soon after his initial detention, a 60-month term of imprisonment will be left to serve nearly in full. For a defendant of his age, currently 73 years old, this sentence will almost certainly ensure that the public, both here in the United States and in Japan are protected from further crimes by

9

the time of his release, at which point he will be nearly 79 years old. For defendant Paul Suzuki, currently 43 years old and who has remained detained, his time thus far in the Nevada Southern Detention Center combined with the remaining time that he will serve in a United States federal prison will almost certainly ensure that the public is protected from further crimes, as the defendant will hopefully have recognized that a consequence of more crime could be another federal prison sentence.

For both defendants, a 60-month term of imprisonment should afford the defendants the opportunity for rehabilitation so that, upon their release, they can contribute positively to society and make amends for the harm that they have caused to many.

Given all the kinds of sentences available and the sentencing range for this particular offense, a 60-month term of imprisonment would be sufficient, but not greater than necessary in meeting the goals of 18 U.S.C. § 3553(a).

## **CONCLUSION**

For all of these reasons, the United States respectfully requests that the Court sentence Junzo Suzuki and Paul Suzuki to a 60-month term of imprisonment followed by a three-year period of supervised release with restitution, which is mandatory, to be determined at a later date.

Dated: March 28, 2022

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

*s/ Della Sentilles*
CORY E. JACOBS
Assistant Chief
DELLA SENTILLES
Trial Attorney
Criminal Division, Fraud Section

CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada

*s/ Jessica Oliva*
JESSICA OLIVA
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the United States Department of Justice, Criminal Division, Fraud Section.  A copy of this sentencing memorandum was served upon counsel of record, via Electronic Case Filing (ECF).


**DATED** this 28th day of March, 2022.

/s/ *Della Sentilles*
DELLA SENTILLES
Trial Attorney
Criminal Division, Fraud Section

# EXHIBIT C

AO 245B (Rev. 09/20)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
District of Nevada

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL SUZUKI | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  2:15-cr-00198-GMN-NJK-3<br><br>USM Number:  55454-048<br><br>Richard Wright, Esq. & Junji Suzuki, Esq.<br>Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    8 of the Superseding Indictment (ECF #420)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1343 &<br>18 U.S.C. § 2 | Wire Fraud and Aiding and Abetting | 4/26/2012 | 8s |

  The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)    all remaining        ☐ is   ☑ are dismissed on the motion of the United States.

  It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/5/2022
Date of Imposition of Judgment

Signature of Judge

GLORIA M. NAVARRO, JUDGE, U.S. DISTRICT COURT
Name and Title of Judge

April 6, 2022
Date

AO 245B (Rev. 09/20)  Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT:    PAUL SUZUKI
CASE NUMBER:    2:15-cr-00198-GMN-NJK-3

# IMPRISONMENT

       The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

60 MONTHS.

☑ The court makes the following recommendations to the Bureau of Prisons:

     The Court recommends that defendant serve his term of incarceration at FCI Terminal Island in San Pedro, California.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at   _____ ☐ a.m.   ☐ p.m.   on  _____ .

     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐ before 2 p.m. on  _____ .

     ☐ as notified by the United States Marshal.

     ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/20)    Judgment in a Criminal Case
                Sheet 3 — Supervised Release

Judgment—Page   **3**   of    **7**

DEFENDANT:  PAUL SUZUKI
CASE NUMBER:  2:15-cr-00198-GMN-NJK-3

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

  Three (3) years.

# MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court, not to exceed 104 tests annually.
       ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.    ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.    ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/20)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  PAUL SUZUKI
CASE NUMBER:  2:15-cr-00198-GMN-NJK-3

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the specific risks posed by your criminal record and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the specific risks posed by your criminal record.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/20)    Judgment in a Criminal Case
                        Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT: PAUL SUZUKI
CASE NUMBER: 2:15-cr-00198-GMN-NJK-3

## SPECIAL CONDITIONS OF SUPERVISION

1. Access to Financial Information – You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office will share financial information with the U.S. Attorney's Office.

2. Debt Obligations – You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

3. Employment Restriction – You must not engage in an occupation, business, or profession, or volunteer activity that would require or enable you to have access to investors or investors' financial resources without the prior approval of the probation officer.

4. Search and Seizure – You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

Note: A written statement of the conditions of release to be provided to defense counsel by the probation officer.

AO 245B (Rev. 09/20)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  6  of  7

DEFENDANT: PAUL SUZUKI
CASE NUMBER: 2:15-cr-00198-GMN-NJK-3

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $To Be Determined | $ WAIVED | $ N/A | $ N/A |

☑ The determination of restitution is deferred until  6/28/2022 . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $                0.00 | $                0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ 

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/20)    Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:  PAUL SUZUKI
CASE NUMBER:  2:15-cr-00198-GMN-NJK-3

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ __100.00__      due immediately, balance due

         ☐  not later than _____ , or
         ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
        _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
        _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
        term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
        imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Defendant and Co-Defendant Names Case Number (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.